**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| Nils Bergquist,<br><br>Plaintiff,<br><br>vs.<br><br>General Motors LLC,<br><br>Defendant. | **CASE NO.: ________________**<br><br>**COMPLAINT** |

For this Complaint, the Plaintiff Nils Bergquist, by undersigned counsel, states as follows:

## PRELIMINARY STATEMENT

1. This is an action by the purchaser of a new 2021 GMC Sierra 1500 AT4 vehicle (hereafter the "subject vehicle") manufactured and sold by the Defendant General Motors LLC. The subject vehicle is equipped with Defendant's 6.2L V-8 "L87" engine, the same engine that Defendant recalled in approximately 597,630 vehicles because they contain manufacturing defects that cause the engines to sustain internal damage, fail, and lose propulsion without warning. Plaintiff seeks damages related to his vehicle's defective engine and Defendant's failure to honor the terms of its warranty.

2. The Plaintiff would not have purchased the subject vehicle had he been made aware of the subject vehicle's defects.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1)(B), in that Plaintiff claims more than $50,000.00 in damages, exclusive of interest and costs.

4. The Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is subject to personal jurisdiction in this District and where Defendant, as principal, directs and controls warranty repairs on covered vehicles through its agents consisting of a dealership network located in this District.

6. Further, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events giving rise to the Plaintiff's claims occurred within this District.

## PARTIES

7. Plaintiff Nils Bergquist was, at all relevant times, an adult individual who resides in Eau Claire, Eau Claire County, Wisconsin, and who purchased the subject vehicle in Bloomington, Hennepin County, Minnesota, which was manufactured or sold by Defendant.

8. Defendant General Motors LLC ("GM") is organized under the laws of Delaware with its principal place of business located at 1240 Woodward Avenue, Detroit, Michigan 48226. At all relevant times, GM was engaged in the business of importing, assembling, marketing, distributing, and warranting GM automobiles in the State of Minnesota and throughout the United States. Defendant GM LLC is a Delaware limited liability company. Its sole member is General Motors Company, a Delaware corporation with its principal place of business in Michigan.

## FACTUAL ALLEGATIONS

9. On January 20, 2021, Plaintiff purchased a new 2021 GMC Sierra 1500 AT4 equipped with the L87 6.2L V-8 engine, Vehicle Identification Number

1GTP9EEL9MZ204642 (hereafter the "Vehicle") from Walser Buick GMC of Bloomington, an authorized GM dealership located at 4601 American Boulevard West, Bloomington, Minnesota (hereinafter "Walser Buick GMC"), for personal, family, or household use.

10. The purchase price of the Vehicle was $61,753.80, excluding options, fees, and taxes. Including options, fees, and taxes, the total sale price of the Vehicle was $67,043.46.

11. At the time of delivery, the Vehicle's odometer read 5 miles.

12. Prior to purchasing the Vehicle, Plaintiff relied upon Defendant's representations regarding Defendant's New Vehicle Limited Warranty that accompanied the sale of the Vehicle, including the representation that Defendant would repair the Vehicle; these representations were material to Plaintiff's decision to purchase the Vehicle.

13. Specifically, under its New Vehicle Limited Warranty, Defendant promised to repair or replace components found to be defective in material or workmanship during the 3-year / 36,000-mile period following such vehicle delivery to the consumer. Additionally, Defendant promised to repair or replace the powertrain components, including the Vehicle's engine, found to be defective in material or workmanship during the 5-year / 60,000-mile period following such vehicle delivery to the consumer.

14. On January 20, 2021, and following the execution of the Vehicle purchase documents, Plaintiff took delivery of the Vehicle.

15. Defendant designates the Vehicle's 6.2L V-8 engine by its Regular Production Option code L87 (hereafter the "L87 engine").

16. On April 24, 2025, Defendant submitted a Part 573 Safety Recall Report to the National Highway Traffic Safety Administration, assigned NHTSA Recall No. 25V-274 and Defendant's own recall number N252494000, covering approximately 597,630 model year

2021 through 2024 vehicles equipped with the L87 engine, including 2021 GMC Sierra 1500 vehicles such as the Vehicle.

17. In that report, Defendant disclosed that the engines in the recalled vehicles "may have manufacturing defects that can lead to engine damage and engine failure," and identified two root causes: rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface finish.

18. Defendant further disclosed that the suspect engine build period ran from March 1, 2021, through May 31, 2024, and that between April 29, 2021, and February 3, 2025, Defendant had received 28,102 field complaints concerning the L87 engine, of which 14,332 involved a loss of propulsion. Upon information and belief, the Vehicle's engine was manufactured within that suspect build period.

19. Defendant began receiving field complaints of L87 engine failures on or about April 29, 2021 - approximately three months after it sold the Vehicle to Plaintiff, and while the Vehicle remained within the term of Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty - and Defendant opened and closed an internal investigation into those failures in February 2022, approximately thirteen months after the sale and likewise within the term of those warranties.

20. Notwithstanding that knowledge, Defendant did not disclose the L87 engine defect to Plaintiff at or before the time Plaintiff purchased the Vehicle and did not disclose it to Plaintiff at any time thereafter while the Vehicle remained within the term of Defendant's warranties.

21. Since the time of Vehicle delivery to the present, the Vehicle has been out of

service at least thirty-three (33) days due to the catastrophic engine failure.

22. On or about July 28, 2025, while Plaintiff was pulling away from a stop sign, the Vehicle shuddered and its engine shut off and would not restart.

23. That same day, Plaintiff had the Vehicle towed to Markquart Motors, an authorized GM dealership located at 2191 South Prairie View Road, Chippewa Falls, Wisconsin (hereinafter "Markquart Motors"), for a repair.

24. At the time the Vehicle's odometer read 49,635 miles.

25. Markquart Motors verified the complaint, found that the starter fuse on the battery distribution block had blown, found that the Vehicle's engine would not turn over by hand, and, upon removing the drain plug and the oil filter, found metal debris present in the Vehicle's engine oil and in the engine oil filter. Markquart Motors determined that the Vehicle's engine had sustained an internal failure and recommended that the engine assembly be replaced.

26. Upon disassembling the Vehicle's engine, Markquart Motors further found pieces of the engine in the Vehicle's intake manifold.

27. Markquart Motors attempted a repair by replacing the Vehicle's engine with a remanufactured engine and, because of the catastrophic nature of the failure, also replacing the radiator, the engine oil cooler lines, the intake manifold, the spark plugs, the drive belts, and all necessary seals and gaskets, and refilling the Vehicle with new oil and coolant.

28. Upon information and belief, the failure of the Vehicle's engine was caused by the same L87 engine defect that Defendant reported to the National Highway Traffic Safety Administration - rod bearing damage caused by sediment present on the connecting rods and in the crankshaft oil galleries, and out-of-specification crankshaft dimensions and surface

finish. The metal debris that Markquart Motors found circulating in the Vehicle's engine oil and engine oil filter, the seizure of the engine, and the pieces of the engine found in the intake manifold are the signature of precisely that bearing failure.

29. The Vehicle's engine failed at 49,635 miles and within five years of the Vehicle's January 9, 2021, in-service date, and was therefore covered by Defendant's New Vehicle Limited Warranty and Limited Powertrain Warranty. Defendant performed the repair without charge to Plaintiff.

30. Upon information and belief, the remanufactured engine that Markquart Motors installed in the Vehicle was itself manufactured within the March 1, 2021, through May 31, 2024, suspect build period, or was manufactured to the same specifications as the engines manufactured within that period, and suffers from the same defect.

31. During this visit, the Vehicle was out of service for approximately thirty-three (33) days, and was ready for pick up on or about August 30, 2025.

32. While the Vehicle was out of service, Plaintiff was required to rent a replacement vehicle at his own expense, for which Plaintiff paid $2,162.80.

33. A vehicle whose engine can sustain catastrophic internal damage, seize, and lose propulsion without warning while being driven at highway speed presents an unreasonable risk to the safety of Plaintiff, his passengers, and the motoring public.

34. As a result of the L87 engine defect, the catastrophic engine failure, and the replacement of the Vehicle's engine, the Vehicle is worth substantially less than a comparable vehicle without such history, and Plaintiff has suffered a diminution in the value of the Vehicle.

35. Had Plaintiff known of the L87 engine defect at the time of purchase, he would

not have purchased the Vehicle, or would have paid substantially less for it.

36. By U.S. First Class Mail dated October 14, 2025, Plaintiff notified Defendant of the above-mentioned nonconformities with the Vehicle and Defendant's failure to conform the Vehicle to the terms of Defendant's express warranty within a reasonable period of time. Within the same letter, Plaintiff revoked his acceptance of the Vehicle.

37. The defects experienced by Plaintiff substantially impair the use, value, and safety of the Vehicle.

38. Plaintiff provided the Defendant, or one or more of its authorized or franchised dealers, with reasonable opportunity to repair the problems with the Vehicle.

39. The Defendant has neglected, failed, or otherwise been unable to repair the substantial impairments to the Vehicle within a reasonable amount of time.

## TOLLING OF STATUTES OF LIMITATIONS

### I. Fraudulent Concealment Tolling

40. Plaintiff did not and could not have known that the Vehicle was equipped with a defective L87 Engine prone to bearing failure, engine seizure, and catastrophic loss of propulsion at the time of purchase or within the applicable limitations period.

41. Any applicable statute of limitations is tolled because Defendant knowingly and actively concealed the L87 engine defect and its associated safety risks from Plaintiff.

42. Defendant had a duty to disclose the defect because it possessed exclusive and superior knowledge of the L87 engine's propensity for internal bearing failure and catastrophic engine seizure, which poses a serious safety risk, including sudden loss of propulsion at highway speeds.

43. Defendant knew of the defect prior to sale through, *inter alia*, pre-production testing, warranty data, dealer repair data, customer complaints, and its obligation to monitor

safety-related data, including reports submitted to NHTSA.

44. Despite this knowledge, Defendant failed to disclose the defect at the time of sale or thereafter and instead marketed the Vehicle as safe, reliable, and durable, thereby actively concealing the true nature of the defect.

45. Defendant further concealed the defect by failing to identify or acknowledge the root cause of engine failures when Plaintiff presented the Vehicle for service, and by attributing symptoms to normal operation, maintenance issues, or isolated incidents rather than a systemic defect.

46. Until the 2025 recall and related disclosures – triggered only after government investigation – Defendant uniformly failed to inform consumers that the L87 engine was defective and could fail without warning, leaving Plaintiff without the ability to discover the defect through reasonable diligence.

47. Defendant's concealment was knowing, affirmative, and ongoing, and was intended to delay or prevent Plaintiff from discovering his claims.

48. As a result of Defendant's conduct, Plaintiff was kept ignorant of material facts necessary to assert his claims, and Defendant is equitably estopped from asserting any statute of limitations defense.

**II. Discovery Rule Tolling**

49. Plaintiff's claims did not accrue, and the statute of limitations was tolled, until Plaintiff discovered or reasonably could have discovered the existence of the L87 engine defect.

50. The defect is latent and not discoverable through reasonable inspection because it resides in internal engine components – including the bearings, crankshaft, and connecting rods – and manifests only upon sudden and catastrophic failure.

51. Prior to the NHTSA investigation and Defendant's subsequent recall, Plaintiff had no reason to suspect that the Vehicle contained a systemic defect, particularly in light of Defendant's uniform representations that its vehicles were safe, reliable, and of high quality.

52. Even where symptoms occurred, Defendant failed to disclose the true cause of those symptoms and instead concealed the existence of a common defect, thereby preventing Plaintiff from discovering his claims through reasonable diligence.

53. Plaintiff therefore could not reasonably have discovered the defect or its cause until Defendant's public admissions and recall activity in or about 2025.

**III. Estoppel**

54. Defendant was under a continuing duty to disclose the true nature, quality, and safety risks of the Vehicle and the L87 engine defect.

55. Defendant knowingly, affirmatively, and actively concealed the defect and continued to misrepresent its vehicles as safe and reliable, despite its knowledge of the defect and its potential for catastrophic engine failure.

56. Plaintiff reasonably relied on Defendant's omissions and misrepresentations and was thereby prevented from timely asserting his claims.

57. Accordingly, Defendant is equitably estopped from asserting any statute of limitations defense.

**IV. Class Action Tolling**

58. The statutes of limitation applicable to Plaintiff's claims – including, without limitation, his express warranty and implied warranty claims – have been tolled by class action tolling by reason of *John v. General Motors, LLC*, originally filed on June 27, 2025 as Case No. 2:25-cv-00914 (E.D. Wis.) and subsequently transferred from the Eastern District of Wisconsin to the Eastern District of Michigan (upon transfer, assigned Case No. 2:25-cv-

12097), which was brought on behalf of a putative class of purchasers and lessees of vehicles equipped with the L87 engine that includes Plaintiff.

**FIRST CAUSE OF ACTION**
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***

59. The Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

60. The Plaintiff is a "consumer" as defined in 15 U.S.C. § 2301(3).

61. Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

62. The subject vehicle is a "consumer product" as defined in 15 U.S.C. § 2301(1).

63. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

64. 15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of the subject vehicle within a reasonable time and without charge to the Plaintiff.

65. Defendant has failed to remedy the subject vehicle's defects within a reasonable time, thereby breaching the written and implied warranties applicable to the subject vehicle.

66. As a result of Defendant's breaches of written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiff has suffered damages.

**SECOND CAUSE OF ACTION**
**Breach of Implied Warranty of Merchantability Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.* and Minn. Stat. § 336.2-314**

67. Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

68. Defendant is a merchant with respect to motor vehicles.

69. The Vehicle was subject to the implied warranty of merchantability, as defined in Minn. Stat. § 336.2-314, running from the Defendant to the Plaintiff.

70. An implied warranty that the subject vehicle was merchantable arose by operation of law as part of the purchase of the subject vehicle.

71. Defendant breached the implied warranty of merchantability in that the subject vehicle was not in merchantable condition when Plaintiff purchased it, or at any time thereafter, and the subject vehicle is unfit for the ordinary purposes for which such vehicles are used.

72. Plaintiff notified Defendant of the defect in the subject vehicle within a reasonable time after Plaintiff discovered it.

73. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff has suffered damages, including but not limited to incidental and consequential damages.

## THIRD CAUSE OF ACTION
**Breach of Express Warranty, Minn. Stat. § 336.2-313**

74. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75. In connection with the sale of the subject vehicle to the Plaintiff, Defendant provided Plaintiff with a New Vehicle Limited Warranty and Limited Powertrain Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the engine and its components.

76. Plaintiff relied on Defendant's warranty when he agreed to purchase the

subject vehicle and Defendant's warranty was part of the basis of the bargain.

77. Plaintiff submitted his Vehicle for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to Plaintiff, by failing to repair the defects under the Vehicle's warranty as described herein within a reasonable period of time.

78. Plaintiff has given Defendant reasonable time to cure said defects, but Defendant has been unable and/or has refused to do so within a reasonable time.

79. As a result of said nonconformities, Plaintiff cannot reasonably rely on the subject vehicle for the ordinary purpose of safe, comfortable, and efficient transportation.

80. The Plaintiff could not reasonably have discovered said nonconformities with the subject vehicle prior to Plaintiff's acceptance of the subject vehicle.

81. The Plaintiff would not have purchased the subject vehicle, or would have paid less for the subject vehicle, had he known, prior to the time of purchase, that the subject vehicle contained these defects.

82. As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranty, Plaintiff has suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of his vehicle, and a diminution in the value of the subject vehicle containing the defects identified herein.

## FOURTH CAUSE OF ACTION
**Revocation of Acceptance, Minn. Stat. § 336.2-608**

83. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

84. Plaintiff reasonably assumed, and Defendant represented, that all of the

aforesaid defects would be cured within a reasonable time.

85. After a lengthy opportunity provided to Defendant to cure, it has become apparent that said defects cannot be seasonably cured.

86. The defects substantially impair the value of the Vehicle to the Plaintiff.

87. By a letter dated October 14, 2025, the Plaintiff notified Defendant of said defects and of Plaintiff's intent to revoke acceptance and demanded return of the purchase price of said Vehicle.

88. Defendant has nevertheless failed to make a good-faith response to this demand within thirty (30) days of its receipt.

89. As a result of Defendant's conduct the Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION

**Violation of the Minnesota Prevention of Consumer Fraud Act and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. §§ 325F.68-.70 and §§ 325D.43-.48**

90. The Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

91. Plaintiff is a consumer who purchased a vehicle for personal, family, or household use in Minnesota.

92. At all relevant times, Defendant engaged in the sale, distribution, marketing, and servicing of motor vehicles in Minnesota and therefore engaged in trade or commerce within the meaning of Minn. Stat. §§ 325F.68-.70 and 325D.43-.48.

93. Minnesota's Prevention of Consumer Fraud Act ("MPCFA"), Minn. Stat. §§ 325F.68-.70, prohibits the use of any fraud, false pretense, false promise, misrepresentation, misleading statement, or deceptive practice in connection with the sale of merchandise. Minnesota's Uniform Deceptive Trade Practices Act ("MUDTPA"), Minn. Stat. §§ 325D.43-.48, separately prohibits deceptive trade practices, including misrepresenting the

characteristics, uses, benefits, or quality of goods, and causing a likelihood of confusion or misunderstanding as to the standard, quality, or grade of goods.

94. In the course of its business, Defendant knowingly and intentionally failed to disclose and actively concealed that the subject vehicles equipped with the 6.2L V-8 L87 engine suffer from a material defect. The defect exists in all or substantially all such vehicles and poses an unreasonable safety risk, exposes consumers to substantial repair costs, and materially diminishes the value of the vehicles.

95. Defendant's omissions and representations were material because a reasonable consumer would consider the existence of such defects important in deciding whether to purchase or lease the vehicle and at what price.

96. By marketing and selling the subject vehicles as reliable, safe, and of high quality while failing to disclose the known engine defect, Defendant committed deceptive trade practices under Minn. Stat. §§ 325F.69 and 325D.44, including but not limited to:

a. Representing that the vehicles have characteristics, uses, benefits, or qualities that they do not have, in violation of Minn. Stat. § 325D.44, subd. 1(5);

b. Representing that the vehicles are of a particular standard, quality, or grade when they are of another, in violation of Minn. Stat. § 325D.44, subd. 1(7);

c. Engaging in fraudulent, deceptive, or misleading practices in connection with the sale of goods, in violation of Minn. Stat. § 325F.69, subd. 1; and

d. Failing to disclose material facts in connection with the sale of goods, causing a likelihood of confusion or misunderstanding in violation of Minn. Stat. § 325D.44, subd. 1(9).

97. Defendant's deceptive trade practices were committed knowingly, as Defendant was aware of the defect through pre-sale testing, consumer complaints, warranty data, repair records, and other internal information, yet continued to market and sell said vehicles without disclosure.

98. As a direct and proximate result of Defendant's deceptive trade practices,

Plaintiff suffered actual damages, including but not limited to diminished vehicle value, loss of use, and other economic losses.

99. Plaintiff would not have purchased the vehicle, or would have paid substantially less for it, had Defendant disclosed the defect.

100. Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff is entitled to bring a private cause of action under the MPCFA and is entitled to recover actual damages, costs, and reasonable attorneys' fees. Under the MUDTPA, Minn. Stat. § 325D.45, Plaintiff is entitled to injunctive relief and, upon proof that Defendant willfully engaged in a deceptive trade practice, to recover attorneys' fees.

101. Defendant's conduct was willful and knowing, warranting the imposition of all remedies available under Minnesota law, including but not limited to actual damages, injunctive relief, attorneys' fees, and costs.

**DEMAND FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against Defendant as follows:

a. An order approving revocation of acceptance of the subject vehicle;

b. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff on the subject contract;

c. Incidental and consequential damages;

d. Punitive damages;

e. Reasonable attorney's fees;

f. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: September 15, 2026

Respectfully submitted,

By: /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
*Attorneys for Plaintiff*